IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| M and M Corporation of South Carolina,<br><br>    Plaintiff,<br><br>v.<br><br>Auto-Owners Insurance Company,<br><br>    Defendant. | Civil Action No. 3:08-2585-JFA<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT** |

The Plaintiff, M and M Corporation of South Carolina ("M&M") owns and operates a Days Inn in the town of Blythewood, South Carolina.. The hotel was damaged by water on August 24, 2006. M&M alleges that Auto-Owners improperly denied its claim for water damage. On the contrary, Auto-Owners properly denied the Plaintiff's water damage claim based upon the surface water exclusion found in its policy.

### Policy Provisions

Auto-Owners issued a Commercial Property Policy to M&M, Policy No. 35091776, with effective dates of 8-28-06 to 8-28-07. The Policy contains a coverage form entitled, "BUILDING AND PERSONAL PROPERTY COVERAGE FORM." It provides, in relevant part,

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

2

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Permanently installed:

**(a)** Fixtures;

**(b)** Machinery; and

**(c)** Equipment;

**(3)** Outdoor fixtures;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

In form CP 1030 ((10-91),  the policy also provides**:**

> **A. COVERED CAUSES OF LOSS**
>
> When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> **1.** Excluded in Section B., Exclusions; or
>
> **2.** Limited in Section C., Limitations;
> that follow.

The form contains the following exclusion:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> **g. Water**
>
> **(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
>
> **(2)** Mudslide or mudflow;
>
> **(3)** Water that backs up from a sewer or drain; or
>
> **(4)** Water under the ground surface pressing on, or flowing or seeping through:
>
> **(a)** Foundations, walls, floors or paved surfaces;
>
> **(b)** Basements, whether paved or not; or
>
> **(c)** Doors, windows or other openings.
>
> But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

(Certified Policy).

**Facts**

The undisputed facts, for purposes of this motion only, are as follows: During the day of August 24, 2006, the town of Blythewood experienced heavy rainfall. At the time of the rain storm, the South Carolina Department of Transportation was in the process of widening and improving Blythewood Road, which runs in front of the Days Inn. The improvement project included the installation of a new underground storm water drainage system that ran parallel to the road and carried fallen rainwater away from the area. Previously, the storm water was carried by a man-made ditch/culvert system that ran parallel to Blythewood Road.

The storm water system had not been completed as of August 24, 2006. The storm water piping stopped approximately 50 feet short of reaching the Plaintiff's property. The rainwater that accumulated on the surface of the ground flowed into the uncompleted underground drainage system. It then exited the pipe at a point 50 feet from the Plaintiff's property. After exiting the pipe, it ran across the surface of the ground, following the topography of the land and into the Plaintiff's parking lot. The water accumulated in the parking lot until it reached a depth sufficient for the water to enter the ground floor of the hotel. (Plaintiff's responses to Request for Admissions). The Plaintiff has produced a video of the water entering his property and pooling in the parking lot. (See video).

**Plaintiff's Admissions**

The Plaintiff has admitted the following facts:

4

(a)     The storm water pipes and ditches running along side the roadway in the vicinity of the Plaintiff's property are not natural watercourses.

(b)     The storm water that eventually flowed onto the Plaintiff's property exited the storm water pipes at a point that was not located on the plaintiff's property.

(c)     The water that caused the damage to the Plaintiff's property was not in an underground pipe or tunnel when it entered the plaintiff's property.

(d)     When the storm water flowed out of the storm water pipes, it flowed across the surface of the ground before entering the Plaintiff's property.

(e)     When the water that damaged the plaintiff's property entered the plaintiff's property, it was flowing across the surface of the ground.

(f)     When the water that damaged the plaintiff's property entered the plaintiff's property, it was not flowing in a definite natural channel, having a bed, sides, or bank.

(g)     The water that entered the building(s) located on the Plaintiff's property was not in an underground pipe or tunnel when it entered the building(s).

(h)     Prior to entering the Plaintiff's building(s), the water collected on the surface of the Plaintiff's parking lot until it rose to a level sufficient to enter the building(s).

(Plaintiff's responses to Requests to Admit).

## Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co.,* 160 S.E.2d 523, 525 (S.C. 1968). The insurer bears the burden of establishing exclusions to coverage. *Boggs v. Aetna Cas. and Sur. Co.,* 252 S.E.2d 565, 568.

## Discussion

The water that entered the Plaintiff's building constituted "surface water" at the time it caused the damage. Therefore, coverage is excluded pursuant to Exclusion B.g.(1).

The term "surface water" is not defined in the policy. Under the law of South Carolina, insurance policies are subject to the general rules of contract construction. *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.,* 514 S.E.2d 327 (S.C. 1999). The court must give policy language its plain, ordinary, and popular meaning. *Id.* When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id.; see Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.,* 588 S.E.2d 112, 115 (S.C. 2003). This court must enforce, not write, contracts of insurance and must give policy

6

language its plain, ordinary, and popular meaning. *Id.* An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White,* 390 S.E.2d 471 (Ct.App. 1990).

It is true that a policy clause extending coverage has to be liberally construed in favor of coverage. *Torrington Co. v. Aetna Cas. and Sur. Co.,* 216 S.E.2d 547 (S.C. 1975). Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *Owners Ins. Co. v. Clayton,* 614 S.E.2d 611, 614 (S.C. 2005); *Boggs v. Aetna Cas. and Sur. Co.,* 252 S.E.2d 565 (S.C. 1979). However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties. *Sphere Drake Ins. Co. v. Litchfield,* 438 S.E.2d 275 (Ct.App. 1993); *South Carolina Farm Bureau Mut. Ins. Co. v. Wilson,* 544 S.E.2d 848, 850 (Ct.App. 2001).

> South Carolina has previously defined "surface waters" as follows:
>
> Surface waters are waters of a casual and vagrant character, which ooze through the soil or diffuse or squander themselves over the surface, following no definite course. They are waters which, though customarily and naturally flowing in a known direction and course, have nevertheless no banks or channels in the soil, and include waters which are diffused over the surface of the ground, and are derived from rains and melting snows; occasional outbursts of water, which in time of freshet or melting of snows descend from the mountains and inundate the country; and the moisture of wet, spongy, springy, or boggy ground.
>
> Further, our courts have noted,

7

> The distinguishing features of surface waters are purely negative, and consist in the absence of the distinguishing features which are common to all water courses. . . If the characteristics of a water course are absent, it is usually treated as surface water, and is governed by the rules of law applicable to surface waters. To constitute a water course, there must be a stream usually flowing in a particular direction, though it need not flow continually. It may sometimes be dry. It must flow in a definite channel, having a bed, sides, or banks, and it naturally discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. . . It is essential to the existence of a water course that there should be a well defined bed or channel, with banks. If these characteristics are absent, there is no water course, within the legal meaning of the term. Hence natural depressions in the land through which surface water from adjoining lands naturally flows are not water courses.

*Lawton v. South Bound R. Co.,* 61 S.C. 548, 39 S.E. 752, 753-754 (1901).

Plaintiff argues that because the surface water temporarily traveled through an underground pipe, it lost it's status as surface water. The Plaintiff's argument is misguided for two reasons. First, South Carolina courts have held that surface water does not stop being surface water because it is artificially channeled. In addition, the Plaintiff's argument ignores the fact that when the water damaged his property, it was on the surface of the ground and was not flowing in a natural watercourse, having a bed, sides, or bank. It was surface water.

**a.     Surface water remains surface water until it flows into a natural watercourse having a definite channel, having a bed, sides, or banks.**

On several occasions, our courts have rejected the argument that transporting surface water through an artificial channel robs it of its designation as surface water. As indicated by the *Lawton* Court above, if the characteristics

8

of a natural watercourse are absent, it is treated as surface water. In *Lawton*, the South Carolina Supreme Court explained,

> the irresistible inference from the facts stated in the complaint is that the water obstructed was nothing but surface water, which was drained from plaintiff's land by the ditch, a mere artificial channel. No lapse of time could invest such a channel with the characteristics of a natural water course.

The Court further stated, "certainly a ditch-a purely artificial channel-cannot with any propriety be regarded as a natural water course." *Id.* at 754; *Cannon v. Atlantic Coast Line R. Co.*, 97 S.C. 233, 81 S.E. 476 (1914).

These cases clarify that for water to cease being surface water, it must flow in a *natural* watercourse with a defined bed or channel, with banks. Surface water does not cease to be surface water simply because it is channeled through a ditch or a pipe; a ditch or a pipe is not a *natural* watercourse. The Plaintiff has admitted that the drainage system on Blythewood Road does not constitute a natural watercourse. (Responses to Request to Admit).

Also instructive on this issue is South Carolina's "common enemy" rule. Under South Carolina law,

> surface water is a common enemy, and every landowner has the right to use such means as he deems necessary for the protection of his property from damages it would cause, except that (1) a landowner must not handle surface water in such a way as to create a nuisance, and (2) **he must not by means of a ditch or other artificial means collect surface water and cast it in concentrated form upon the lands of another.**

*Johnson v. Williams,* 121 S.E.2d 223 (S.C. 1961). Collecting surface water "by means of a ditch" does not change the fact that it is surface water. There is no contemplation under South Carolina law that surface water loses its

9

characteristic as surface water simply because it is artificially channeled.

**b.     Even if the water lost its designation as surface water as it flowed through the pipe, it regained its designation as surface water when it exited the pipe and was clearly surface water when it caused the damage to Plaintiff's property.**

As previously discussed, the surface water resulting from the rain storm exited the storm pipe at a point that was not on the Plaintiff's property. When it came out of the pipe, it travelled across the surface of the ground and did not follow any defined channel or watercourse. It diffused and spread into the Plaintiff's parking lot where it pooled and eventually rose to a height sufficient to enter the ground floor of the Plaintiff's building. Viewing the video, it difficult to imagine anyone disputing that the water that entered the Plaintiff's building was anything other than surface water. It was water on the surface of the ground that entered the Plaintiff's building.

While there is no case in South Carolina discussing the surface water exclusion under these same facts, other jurisdictions examining similar facts have found that the damage was caused by surface water.

In *Hirschfield v. Continental Cas. Co.*, 405 S.E.2d 737 (Ga. App. 1991), the plaintiff alleged that blockage in an underground storm drain caused rainwater, which had previously entered the drain at an upstream location, to be diverted upward through a grate located near his property, across the surface of the ground and into the basement of his house. The Georgia Court of Appeals found that the water that entered the Plaintiff's basement met the definition of "surface water" widely accepted in Georgia. In reaching its decision, the court stated,

> Whether in the present case the rainwater was diverted from the storm drain to the surface by an underground blockage, or it accumulated near the grate because the drain was otherwise obstructed, it is undisputed that the rainwater then flowed from the adjacent grate, across a surface area, and into the basement. Under these facts, the water entering the basement fits squarely within the "surface water" exclusion in the policy.

*Id.* at 738. *Hirschfield's* facts are very similar to those at hand and is persuasive on the issue before the Court.

Ohio courts have reached the same conclusion. In *Reith v. McGill Smith Punshon, Inc.,* 840 N.E.2d 226 (Ohio App. 1 Dist. 2005), the court expressly rejected the contention that storm water that enters an underground pipe loses it designation as surface water. In *Reith*, the Plaintiffs suffered flooding as a result of a breach in a storm water pipe buried beneath their property.

The court analyzed its definition of storm water (which is similar to South Carolina's) and its prior holdings that storm water did not cease to be storm water when diverted by a ditch or pipe. The *Reith* court concluded, "[W]e are not persuaded that there is a legal distinction between surface water that is above the ground and surface water that is temporarily channeled through underground pipes." *Id.* at 232. The court further held,

> the surface rain water that was temporarily channeled underground through pipes remained surface water until it reached an endpoint where it mixed with 'other waters.' That is, it remained surface water while piped under the Reith's property.

*Id.* at 231.

The *Reith* court essentially found that water retains its identity as surface water until it reaches a natural watercourse. The fact that the water was channeled through an underground pipe did not affect its status. As South

11

Carolina's definition of surface water and it decisions regarding artificial channels is similar to that of Ohio, South Carolina would likely reach the same conclusion.

Even more on point is the case of *Myers v. Encompass Indemn. Co.,* 863 N.E.2d 1083 (Ohio App. 12 Dist. 2006). In *Myers,* rain fell and entered a catch basin and drain pipe on the property of plaintiff's neighbor. The flow of water through the drain pipe was hampered by debris, an intersecting pipe that reduced flow in the pipe, and an outlet pipe smaller than the intake pipe, which created pressure in the system. Water gushed back up from the drain pipe into the catch basin, overflowed, followed the terrain of the property and flowed into the plaintiff's basement. The *Meyers* court found that that the damage was caused by surface water and that the exclusion in the insurance policy at issue applied.

Likewise, the case of *T.H.E. Ins. Co. v. Charles Boyer Children's Trust*, 455 F.Supp.2d 284 (M.D.Pa. 2006), *affirmed* 269 Fed.Appx. 220 (3rd Cir. 2008) is persuasive. In that case, the plaintiff alleged that a storm water pipe ruptured causing water and mud to accumulate in its parking lot and eventually enter the building. The insurance carrier argued that the water came from another area of the property. The court noted Pennsylvania's definition of surface water as "waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." *Id.* at 296.

Based upon this definition, the court stated,

This dispute misapprehends the nature of "surface water." *All* the water that accumulated outside the east side of the building, to a height of more than four feet, constituted "surface water," i.e., water that had accumulated there because of the heavy rain and the

> diverted flow of the surface water. Thus, the dispute as to the source of the surface water that inundated the bowling alley is immaterial. What is indisputable is that water which had accumulated outside the bowling alley was derived from torrential rains that hit the Pottsville area on July 11th and 12th, and this "surface water" ultimately flooded the interior of the bowling alley.
>
> It is thus evident that the damage to the bowling alley was caused by "surface water," whether it came from the parking lot or from the embankment south of the building. Courts have consistently held that rainfall that collects outside a building and subsequently flows into that building is "surface water" for purposes of the surface water exclusion.

*Id*. at 297.

Based upon the foregoing authority, the Plaintiff's argument that surface water is magically transformed into some other type of water because it temporarily travels through a pipe is misguided. The water derived from rain did not ever flow in any natural watercourse with a bed or banks.[1] A pipe is not a natural watercourse and does not alter its character as surface water. Until surface water reaches a natural watercourse, it retains its identity as surface water.

In addition, it is undeniable that at the time the water entered the plaintiff's building and caused the damage, it was surface water. The Plaintiff admits that it was flowing across the surface of the ground when it entered his property and that it was not flowing in a definite natural channel, having a bed, sides, or bank. It is undisputed that the water collected in the parking lot before it entered the building. The water did not enter the Plaintiff's building through a pipe or any other channeled or concentrated means. One only need look at the video of the

---

[1] If it had, Auto-Owners submits that that the same exclusion would apply, because "flood" water is also excluded.

water to see the unmistakable truth, the building was damaged by surface water. To categorize what is shown in the video as anything other than surface water would torture the plain and unambiguous language of the insurance policy.

## Conclusion

Based upon the foregoing discussion, the property damage claimed by the Plaintiff is excluded under the provisions of the policy as a matter of law. Therefore, Auto-Owners requests that the Court grant its motion for summary judgment and dismiss the allegations against Auto-Owners with prejudice.

ELLIS, LAWHORNE & SIMS, P.A.

By: _____ */s/ John T. Lay, Jr.*
John T. Lay, Jr. (Fed ID 5539)
A. Johnston Cox   (Fed ID 6534)
1501 Main Street – Fifth Floor
Post Office Box 2285
Columbia, SC 29202
Telephone:  803-254-4190
Facsimile:   803-343-1218
jlay@ellislawhorne.com
jcox@ellislawhorne.com

ATTORNEYS FOR DEFENDANT

Columbia, South Carolina

April 6, 2009

14